## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IRA SANDERS, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>   v.<br><br>TORRENT PHARMA, INC., THE KROGER CO., HARRIS TEETER, LLC, and HARRIS TEETER SUPERMARKETS, INC.,<br><br>        Defendants. | Civil Action No.<br><br><br>**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Ira Sanders ("Plaintiff"), residing at 16730 Hampton Crossing Drive, Huntersville, North Carolina 28078, brings this action on behalf of himself and all others similarly situated against Defendants Torrent Pharma, Inc. ("Torrent"), having its principal place of business at 150 Allen Road, Basking Ridge, New Jersey 07920, The Kroger Co. ("Kroger"), having its principal place of business at 1014 Vine Street, Cincinnati, Ohio 45202, Harris Teeter, LLC, having its principal place of business at 701 Crestdale Road, Matthews, NC 28105, and Harris Teeter Supermarkets, Inc. (together with The Kroger Co. and Harris Teeter, LLC, "Harris Teeter") (collectively, "Defendants"), having its principal place of business at 701 Crestdale Road, Matthews, NC 28105. Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

## NATURE OF THE ACTION AND FACTS COMMON TO ALL CLAIMS

1.      This is a class action lawsuit regarding Defendant Torrent's manufacturing and distribution of losartan-containing generic prescription medications contaminated with N-Nitrosodiethylamine ("NDEA"), a carcinogenic and liver-damaging impurity.  In turn, Defendant Harris Teeter sold these contaminated generic medications to Plaintiff and other similarly-situated consumers.

2.      Originally marketed under the brand names Cozaar, Tozaar, and Tozam, losartan is a prescription medication mainly used for the treatment of high blood pressure, diabetic kidney disease, congestive heart failure, and left ventricular enlargement, among other issues.  However, due to manufacturing defects originating from overseas laboratories in India, certain generic formulations have become contaminated with NDEA.

3.      NDEA is an organic chemical.  The U.S. Food and Drug Administration ("FDA") reports that NDEA is found in "air pollution, and industrial processes, and has been classified as a probable human carcinogen as per international Agency for Research on Cancer (IARC) classification."  NDEA is also classified as a Group 2A carcinogen (probable human carcinogen) by the World Health Organization.  NDEA is acutely toxic when consumed orally.

**A.  Torrent recalls its losartan-containing medications due to the presence of an impurity, NDEA, resulting from manufacturing defects from an overseas supplier in India**

4.      On December 20, 2018, Defendant Torrent "voluntarily recall[ed] 2 lots of Losartan potassium tablets, USP to the consumer level due to the detection of trace amounts of an unexpected impurity found in an active pharmaceutical ingredient ('API')," resulting from Torrent's overseas API supplier in India.  Further, "[t]he impurity detected in the API is N-nitrosodiethylamine (NDEA)."

5.      The December 20, 2018 recall concerned the following prescriptions:

| NDC | Manufacturer | Product Description | Lot/Batch | Expiration Date |
|-----|--------------|---------------------|-----------|-----------------|
| 13668-115-30 | Torrent Pharmaceuticals LTD | LOSARTAN POTASSIUM TAB, USP 100mg,30count bottles | BO31C016 | 04/2019 |
| 13668-115-90 | Torrent Pharmaceuticals LTD | LOSARTAN POTASSIUM TAB, USP 100mg,90count bottles | BO31C016 | 04/2019 |
| 13668-115-10 | Torrent Pharmaceuticals LTD | LOSARTAN POTASSIUM TAB, USP 100mg,1000-count bottles | 4DK3C005 | 04/2019 |

6.      The recall further warns that "[c]onsumers should also contact their physician or healthcare provider if they have experienced any problems that may be related to taking or using this drug product," and that "[p]atients should contact their pharmacist or physician who can advise them about an alternative treatment."

7.      On January 22, 2019, Defendant Torrent expanded its recall to the following lots:

| NDC | Manufacturer | Product Description | Lot/Batch | Expiration Date |
|-----|--------------|---------------------|-----------|-----------------|
| 13668-115-30 | Torrent Pharmaceuticals LTD | LOSARTAN POTASSIUM TAB, USP 100mg,30count bottles | BO31C016 | 04/2019 |
| 13668-115-90 | Torrent Pharmaceuticals LTD | LOSARTAN POTASSIUM TAB, USP 100mg,90count bottles | BO31C016 | 04/2019 |
| 13668-115-10 | Torrent Pharmaceuticals LTD | LOSARTAN POTASSIUM TAB, USP 100mg,1000-count bottles | 4DK3C005 | 04/2019 |
| 13668-115-10 | Torrent Pharmaceuticals LTD | LOSARTAN POTASSIUM TAB, USP 100mg,1000-count bottles | 4DK3C004 | 04/2019 |
| 13668-115-10 | Torrent Pharmaceuticals LTD | LOSARTAN POTASSIUM TAB, USP 100mg,1000-count bottles | 4DU3C040 | 10/2019 |

| NDC | Manufacturer | Product Description | Lot/Batch | Expiration Date |
|---|---|---|---|---|
| 13668-115-10 | Torrent Pharmaceuticals LTD | LOSARTAN POTASSIUM TAB, USP 100mg,1000-count bottles | 4DU3E049 | 05/2021 |
| 13668-115-10 | Torrent Pharmaceuticals LTD | LOSARTAN POTASSIUM TAB, USP 100mg,1000-count bottles | 4DU3E050 | 05/2021 |
| 13668-409-30 | Torrent Pharmaceuticals LTD | LOSARTAN POTASSIUM TAB, USP 50mg,30count bottles | 4L67C035 | 10/2019 |
| 13668-409-90 | Torrent Pharmaceuticals LTD | LOSARTAN POTASSIUM TAB, USP 50mg,90count bottles | 4L67C035 | 10/2019 |
| 13668-409-90 | Torrent Pharmaceuticals LTD | LOSARTAN POTASSIUM TAB, USP 50mg,90count bottles | 4L67C036 | 10/2019 |
| 13668-409-10 | Torrent Pharmaceuticals LTD | LOSARTAN POTASSIUM TAB, USP 50mg,1000-count bottles | 4O50C005 | 11/2019 |
| 13668-113-90 | Torrent Pharmaceuticals LTD | LOSARTAN POTASSIUM TAB, USP 25mg,90count bottles | 4O49C013 | 09/2019 |
| 13668-116-90 | Torrent Pharmaceuticals LTD | LOSARTAN POTASSIUM and HYDROCHOLOROTHIAZIDE TABLETS, USP 50mg/12.5 mg, 90 count bottles. | BP02C008 | 03/2019 |
| 13668-116-10 | Torrent Pharmaceuticals LTD | LOSARTAN POTASSIUM and HYDROCHOLOROTHIAZIDE TABLETS, USP 50mg/12.5 mg, 1000 count bottles. | BEF7D006 | 03/2020 |
| 13668-117-90 | Torrent Pharmaceuticals LTD | LOSARTAN POTASSIUM and HYDROCHOLOROTHIAZIDE TABLETS, USP 100 mg/12.5 mg, 90 count bottles. | BX35C020 | 05/2019 |
| 13668-117-90 | Torrent Pharmaceuticals LTD | LOSARTAN POTASSIUM and HYDROCHOLOROTHIAZIDE TABLETS, USP 100 mg/12.5 mg, 90 count bottles. | BX35C049 | 08/2019 |
| 13668-117-10 | Torrent Pharmaceuticals LTD | LOSARTAN POTASSIUM and HYDROCHOLOROTHIAZIDE | BX35C022 | 05/2019 |

| NDC | Manufacturer | Product Description | Lot/Batch | Expiration Date |
|---|---|---|---|---|
| | | TABLETS, USP<br>100 mg/12.5 mg, 1000 count bottles. | | |
| 13668-117-10 | Torrent Pharmaceuticals LTD | LOSARTAN POTASSIUM and HYDROCHOLOROTHIAZIDE TABLETS, USP<br>100 mg/12.5 mg, 1000 count bottles. | BX35C023 | 05/2019 |

**B. Defendants' losartan generic medications are not of equal quality and safety to brand-name drugs**

8.      Generic drugs reach the market when the brand-name version of the drug comes off patent, and other competitors are able to seek approval for, market, and sell bioequivalent versions of the brand-name drug.  These generic equivalents are supposed to be of equal quality and equal safety.  According to the FDA, "[a]ll generic drugs approved by [the] FDA have the same high quality, strength, purity, and stability as brand-name drugs."

9.      Here, the losartan-containing drugs manufactured by Torrent are supposed to be equivalent to the brand-name drugs.  However, they are not because they suffer from a manufacturing defect which caused their generic losartan to become contaminated with NDEA.

10.     As such, Torrent's losartan-containing medications are neither safe nor of equal quality to the brand-name version of the medication.

**C. Plaintiff Sanders and Class Members were harmed by purchasing and consuming contaminated losartan-containing medications manufactured, distributed, and sold by Defendants**

11.     Plaintiff and the Class were injured by the full purchase price of their losartan-containing medications.  These medications are worthless, as they are contaminated with carcinogenic and harmful NDEA, and therefore and are not fit for human consumption.  Indeed, Plaintiff has been instructed to consult with his doctor immediately and was warned that

consumption of his losartan medication may result in a "potential health hazard or safety risk." Plaintiff and the Class are further entitled to statutory damages, damages for the injury sustained in consuming high levels of acutely-toxic NDEA, and for damages related to Defendants' conduct.

12.     Plaintiff brings this action on behalf of himself and Class Members for equitable relief and to recover damages and restitution for: (i) breach of express warranty; (ii) breach of the implied warranty of merchantability; (iii) violation of North Carolina's Unfair or Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. §§ 75-1.1, *et seq.*; (iv) unjust enrichment; (v) fraudulent concealment; (vi) fraud; (vii) conversion; (viii) strict products liability; (ix) gross negligence; (x) negligence; and (xii) battery.

## PARTIES

13.     Plaintiff Ira Sanders is a citizen of North Carolina who resides in Huntersville, North Carolina.  During all relevant time periods, Plaintiff Sanders was prescribed losartan-containing medication manufactured and distributed by Defendant Torrent, and sold by Defendants Harris Teeter.  Plaintiff Sanders originally learned about the recall by receiving notices from Aetna and Harris Teeter.  The Aetna letter, dated January 3, 2019, warned Plaintiff Sanders that "[t]here's a recall for a drug you may use," due to **an unexpected impurity [that] was found in these products that may cause health risks**" (bold in original).  The Aetna letter further warned that "**[t]here's a potential health hazard or safety risk if you're using this product**" (bold in original).  The Aetna letter further urged Plaintiff Sanders to "**[p]lease call your doctor right away for advice if you may be using affected product**" (bold in original). Plaintiff Sanders reviewed the recall letter, cross referenced the affected NDC numbers with the NDC number of the medication he purchased, and determined that he was prescribed, purchased,

and had been consuming one of the contaminated medications manufactured by Torrent, and sold by Harris Teeter.  When purchasing his losartan-containing medications from Defendants Torrent and Harris Teeter, Plaintiff Sanders reviewed the accompanying labels and disclosures, and understood them as representations and warranties by the manufacturer, distributor, and pharmacy that the medications were properly manufactured and free from contaminants and defects.  Plaintiff Sanders relied on these representations and warranties in deciding to purchase his losartan-containing medications from Defendants Torrent and Harris Teeter, and these representations and warranties were part of the basis of the bargain, in that he would not have purchased his losartan-containing medications from Defendants Torrent and Harris Teeter if he had known that they were not, in fact, properly manufactured and free from contaminants and defects.  Plaintiff Sanders also understood that in making the sale, Harris Teeter was acting with the knowledge and approval of Torrent and/or as the agent of Torrent.  Plaintiff Sanders also understood that each purchase involved a direct transaction between himself and Torrent, because his medication came with packaging and other materials prepared by Torrent, including representations and warranties that his medications were properly manufactured and free from contaminants and defects.

14.     Defendant Torrent Pharma, Inc. is a corporation organized under the laws of the State of Delaware and maintains its principal place of business at 150 Allen Road, Basking Ridge, New Jersey 07920.  Defendant Torrent conducts substantial business in the United States, and specifically in the state of New Jersey and North Carolina.  Torrent has been engaged in the manufacturing, sale, and distribution of contaminated generic losartan in the United States.

15.     Defendant The Kroger Co. is a corporation organized under the laws of the State of Delaware and maintains its principal place of business at 1014 Vine Street, Cincinnati, Ohio

45202.  Kroger is the largest supermarket company in the United States, and the seventeenth largest company in the U.S.  Kroger conducts substantial business in the states of New Jersey and North Carolina.  Kroger, through its various entities, sells losartan-containing medication in the United States, and in the states of New Jersey and North Carolina.  Kroger sells losartan-containing medication through its agents and alter egos in the United States, including Harris Teeter.  There exists, and at all times herein existed, a unity of ownership between Kroger and Harris Teeter, and their agents such that any individuality or separateness between them has ceased and each of them is the alter ego of the other.  Upon information and belief, Kroger communicates with Harris Teeter concerning virtually all aspects of its business in the United States.  At all relevant times, Harris Teeter acted as an authorized agent, representative, servant, employee and/or alter ego of Kroger while performing activities including but not limited to selling losartan-containing medications in the United States, in this jurisdiction, and in the states of New Jersey and North Carolina.

16.     Defendant Harris Teeter, LLC is a company organized under the laws of the State of North Carolina and maintains its principal place of business at 701 Crestdale Road, Matthews, NC 28105.  Harris Teeter, LLC is a retail grocery chain that is a fully-owned subsidiary of Defendant Kroger.  Harris Teeter, LLC conducts substantial business in the states of New Jersey and North Carolina.  Harris Teeter, LLC, through its pharmacy, sells losartan-containing medication in the United States, and in the states of New Jersey and North Carolina.

17.     Defendant Harris Teeter Supermarkets, Inc. is a corporation organized under the laws of the State of North Carolina and maintains its principal place of business at 701 Crestdale Road, Matthews, NC 28105.  Harris Teeter Supermarkets, Inc. is a retail grocery chain that is a fully-owned subsidiary of Defendant Kroger.  Harris Teeter Supermarkets, Inc. conducts

substantial business in the states of New Jersey and North Carolina.  Harris Teeter Supermarkets,

Inc., through its pharmacy, sells losartan-containing medication in the United States, and in the

states of New Jersey and North Carolina.

## JURISDICTION AND VENUE

18.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A),

as modified by the Class Action Fairness Act of 2005, because at least one member of the Class,

as defined below (the "Class"), is a citizen of a different state than Defendants, there are more

than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000

exclusive of interest and costs.

19.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because many of the

acts and transactions giving rise to this action occurred in this District, and because Defendants

(a) are authorized to conduct business in this District and have intentionally availed themselves

of the laws and markets within this District through the promotion, marketing, distribution, and

sale of contaminated losartan-containing medications in this District; (b) conduct substantial

business in this District; and (c) are subject to personal jurisdiction in this District.  Additionally,

Defendant Torrent maintains its principal place of business in this District.

## CLASS ALLEGATIONS

20.    Plaintiff seeks to represent a class defined as all persons in the United States who

purchased losartan-containing medications that are contaminated with NDEA (the "Class").

Specifically excluded from the Class are persons who made such purchase for the purpose of

resale, Defendants, Defendants' officers, directors, agents, trustees, parents, children,

corporations, trusts, representatives, employees, principals, servants, partners, joint venturers, or

entities controlled by Defendants, and their heirs, successors, assigns, or other persons or entities

related to or affiliated with Defendants and/or Defendants' officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

21.    Plaintiff also seeks to represent a subclass of all Class members who purchased losartan-containing medications in North Carolina (the "North Carolina Subclass").

22.    Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint.

23.    **Numerosity.**  The members of the Class are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable.  Upon information and belief, Plaintiff reasonably estimates that there are hundreds of thousands of members in the Class.  Although the precise number of Class members is unknown to Plaintiff, the true number of Class members is known by Defendants.  More specifically, Defendants maintain databases that contain the following information: (i) the name of each Class member who was prescribed the contaminated medication; (ii) the address of each Class member; and (iii) each Class member's payment information related to the contaminated medication.  Thus, Class members may be identified and notified of the pendency of this action by U.S. Mail, electronic mail, and/or published notice, as is customarily done in consumer class actions.

24.    **Existence and predominance of common questions of law and fact.**  Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members.  These common legal and factual questions include, but are not limited to, the following:

(a)    whether the losartan-containing medications manufactured, distributed, and sold by Defendants were in fact contaminated with NDEA, thereby breaching the express and implied

warranties made by Defendants and making the medication unfit for human consumption and therefore unfit for its intended purpose, and constituting a clear manufacturing defect for purposes of strict liability and negligence, as well as battery as to those who consumed the contaminated medication;

(b)      whether Defendants knew or should have known that the losartan-containing medications were in fact contaminated with NDEA prior to the recall, thereby constituting fraud and/or fraudulent concealment, and negligence or gross negligence;

(c)      whether Defendants have unlawfully converted money from Plaintiff and the Class;

(d)      whether Defendants are liable to Plaintiff and the Class for unjust enrichment;

(e)      whether Defendants are liable to Plaintiff and the Class for fraudulent concealment;

(f)      whether Defendants are liable to Plaintiff and the Class for violation of North Carolina's Unfair or Deceptive Trade Practices Act, N.C. Gen. Stat. §§ 75-1.1, *et seq.*;

(g)      whether Defendants are liable to Plaintiff for breaches of express and implied warranties;

(h)      whether Plaintiff and the Class have sustained monetary loss and the proper measure of that loss;

(i)      whether Plaintiff and the Class are entitled to declaratory and injunctive relief;

(j)      whether Plaintiff and the Class are entitled to restitution and disgorgement from Defendants; and

(k)      Whether the marketing, advertising, packaging, labeling, and other promotional materials for Defendants' losartan medications are deceptive.

25.     **Typicality.**  Plaintiff's claims are typical of the claims of the other members of the Class in that Defendants mass marketed and sold contaminated medications to consumers throughout the United States.  This contamination was present in all of the recalled medications manufactured, distributed, and sold by Defendants.  Therefore, Defendants breached their express and implied warranties to Plaintiff and Class members by manufacturing, distributing, and selling the contaminated losartan medication.  Plaintiff's claims are typical in that they were uniformly harmed in purchasing and consuming the contaminated medications.  Plaintiff's claims are further typical in that Defendants deceived Plaintiff in the very same manner as they deceived each member of the Class.  Further, there are no defenses available to Defendants that are unique to Plaintiff.

26.     **Adequacy of Representation.**  Plaintiff will fairly and adequately protect the interests of the Class.  Plaintiff has retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Class.  Furthermore, Plaintiff has no interests that are antagonistic to those of the Class.

27.     **Superiority.**   A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense of individual litigation of their claims against Defendants.  It would, thus, be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs committed against them.  Furthermore, even if Class members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also

increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

28.    In the alternative, the Class may also be certified because:

(a)    the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for the Defendants;

(b)    the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

(c)    Defendants have acted or refused to act on grounds generally applicable to the Class as a whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

## COUNT I
## Breach Of Express Warranty
### (On Behalf Of The Nationwide Class)

29.    Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

30.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class and North Carolina Subclass against Defendants.

31.    Plaintiff, and each member of the nationwide Class, formed a contract with Defendants at the time Plaintiff and the other Class members purchased the contaminated losartan medications.  The terms of the contract include the promises and affirmations of fact

13

made by Defendants on the contaminated medication's packaging and through marketing and advertising. This labeling, marketing, and advertising constitute express warranties and became part of the basis of the bargain, and are part of the standardized contract between Plaintiff and the members of the Class and Defendants.

32.    Defendants expressly warranted that the losartan-containing medications would contain only what was stated on the label, and would not contain harmful and carcinogenic defects and impurities such as NDEA. Plaintiff relied on the express warranty that his medication would contain only what was stated on the label, and that it would not be contaminated with impurities. These express warranties further formed the basis of the bargain, and are part of the standardized contract between Plaintiff and the members of the Class and Defendants.

33.    Plaintiff and the Class performed all conditions precedent to Defendants' liability under this contract when they purchased the contaminated medication.

34.    Defendants breached express warranties about the contaminated medication and their qualities because Defendants' statements about the contaminated medications were false and the contaminated medications do not conform to Defendants' affirmations and promises described above.

35.    Plaintiff and each of the members of the Class would not have purchased the contaminated medications had they known the true nature of the contaminated medications' ingredients and what the contaminated medications contained (*i.e.*, NDEA).

36.    As a result of Defendants' breaches of express warranty, Plaintiff and each of the members of the Class have been damaged in the amount of the purchase price of the product and any consequential damages resulting from the purchases.

37.     On January 24, 2019, prior to filing this action, Defendants were served with a pre-suit notice letter that complied in all respects with U.C.C. §§ 2-313, 2-607.  Plaintiff's counsel sent Defendants a letter advising them that they breached an express warranty and demanded that they cease and desist from such breaches and make full restitution by refunding the monies received therefrom.  A true and correct copy of Plaintiff's counsel's letter is attached hereto as Exhibit A.

## COUNT II
**Breach Of The Implied Warranty Of Merchantability**
**(On Behalf Of The Nationwide Class)**

38.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

39.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and North Carolina Subclass against Defendants.

40.     Defendants, as the designers, manufacturers, marketers, distributors, and/or sellers, impliedly warranted that the losartan-containing medications (i) contained no NDEA and (ii) are generally recognized as safe for human consumption.

41.     Defendants breached the warranty implied in the contract for the sale of the contaminated losartan-containing medications because they could not pass without objection in the trade under the contract description, the goods were not of fair average quality within the description, and the goods were unfit for their intended and ordinary purpose because the losartan-containing medications manufactured, distributed, and sold by Defendants were contaminated with carcinogenic and liver toxic NDEA, and as such are not generally recognized as safe for human consumption.  As a result, Plaintiff and Class members did not receive the goods as impliedly warranted by Defendants to be merchantable.

15

42.     Plaintiff and Class members purchased the losartan-containing medications in reliance upon Defendants' skill and judgment and the implied warranties of fitness for the purpose.

43.     The losartan-containing medications were not altered by Plaintiff or Class members.

44.     The losartan-containing medications were defective when they left the exclusive control of Defendants.

45.     Defendants knew that the losartan-containing medications would be purchased and used without additional testing by Plaintiff and Class members.

46.     The contaminated losartan medications were defectively manufactured and unfit for its intended purpose, and Plaintiff and Class members did not receive the goods as warranted.

47.     As a direct and proximate cause of Defendants' breach of the implied warranty of merchantability, Plaintiff and Class members have been injured and harmed because:  (a) they would not have purchased the losartan-containing medications on the same terms if they knew that the products contained NDEA, and are not generally recognized as safe for human consumption; and (b) the losartan-containing medications do not have the characteristics, ingredients, uses, or benefits as promised by Defendants.

**<u>COUNT III</u>**
**Violation Of North Carolina's North Carolina's Unfair or Deceptive Trade Practices Act,**
**N.C. Gen. Stat. §§ 75-1.1, *et seq.***
**(On Behalf Of The North Carolina Subclass)**

48.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

49.     Plaintiff brings this claim individually and on behalf of the members of the proposed North Carolina Subclass against Defendants.

50.     Defendants' advertising, marketing, and sale of the losartan-containing medications constitutes activities in and affecting commerce.

51.     Defendants had superior knowledge that their losartan-containing medications were contaminated with NDEA.  As manufacturers and retailers of prescription pharmaceuticals, Defendants had conducted quality testing of its medications.

52.     Further, despite the initial wave of recalls on December 20, 2018, Defendants continued to sell losartan-containing medications from overseas API manufacturers contaminated with NDEA.  Defendants continued to manufacture and sell contaminated losartan medications after the initial recalls.

53.     Defendants' conduct, including their concealment, constitutes unfair and deceptive trade practices, in violation of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §§ 75-1.1, *et seq.*

54.     Defendants misrepresented their losartan-containing medications as (i) containing no NDEA and (ii) being generally recognized as safe for human consumption.

55.     As a proximate and direct cause of Defendants' violations of the North Carolina Unfair and Deceptive Trade Practices Act, Plaintiff and Class members have been injured and harmed because:  (a) they would not have purchased the losartan-containing medications on the same terms if they knew that the products contained NDEA, and are not generally recognized as safe for human consumption; and (b) the losartan-containing medications do not have the characteristics, ingredients, uses, or benefits as promised by Defendants.

**COUNT IV**
**Unjust Enrichment**
**(On Behalf Of The Nationwide Class)**

56.     Plaintiff hereby incorporates by reference the allegations contained in all

preceding paragraphs of this complaint.

57.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class and North Carolina Subclass against Defendants.

58.    Plaintiff and the Class conferred a benefit on Defendants in the form of monies paid to purchase Defendants' contaminated losartan medications.

59.    Defendants voluntarily accepted and retained this benefit.

60.    Because this benefit was obtained unlawfully, namely by selling and accepting compensation for contaminated medications unfit for human use, it would be unjust and inequitable for the Defendants to retain it without paying the value thereof.

**COUNT V**
**Fraudulent Concealment**
**(On Behalf Of The Nationwide Class)**

61.    Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

62.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class and North Carolina Subclass against Defendants.

63.    Defendants had a duty to disclose material facts to Plaintiff and the Class given their relationship as contracting parties and intended users of the medication.  Defendants also had a duty to disclose material facts to Plaintiff and the Class, namely that they were in fact manufacturing, distributing, and selling harmful and contaminated medications unfit for human consumption, because Defendants had superior knowledge such that the transactions without the disclosure were rendered inherently unfair.

64.    Defendants possessed knowledge of these material facts.  As manufacturers and retailers of prescription pharmaceuticals, Defendants had conducted quality testing of its

18

medications.

65.    Further, despite the initial wave of recalls on December 20, 2018, Defendants continued to sell losartan-containing medications from overseas API manufacturers contaminated with NDEA.  Defendants continued to manufacture and sell contaminated losartan medications after the initial recalls.

66.    Defendants failed to discharge their duty to disclose these materials facts.

67.    In so failing to disclose these material facts to Plaintiff and the Class, Defendants intended to hide from Plaintiff and the Class that they were purchasing and consuming medications with harmful impurities that were unfit for human use, and thus acted with scienter and/or an intent to defraud.

68.    Plaintiff and the Class reasonably relied on Defendants' failure to disclose insofar as they would not have purchased the contaminated losartan medications manufactured, distributed, and sold by Defendants had they known it was contaminated with NDEA.

69.    As a direct and proximate cause of Defendants' fraudulent concealment, Plaintiff and the Class suffered damages in the amount of monies paid for the defective medication.

70.    As a result of Defendants' willful and malicious conduct, punitive damages are warranted.

## COUNT VI
### Fraud
### (On Behalf Of The Nationwide Class)

71.    Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

72.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class and North Carolina Subclass against Defendants.

73.    As discussed above, Defendants provided Plaintiff and Class members with false

19

or misleading material information about the losartan medications manufactured, distributed, and sold by Defendants on the medication's packaging, labels, and accompanying documentation.

74.     The misrepresentations and omissions of material fact made by Defendants, upon which Plaintiff and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class members to purchase these contaminated losartan-containing medications.

75.     Defendants knew that the medications contained these harmful impurities.  As manufacturers and retailers of prescription pharmaceuticals, Defendants had conducted quality testing of its medications.

76.     Further, despite the initial wave of recalls on December 20, 2018, Defendants continued to sell losartan-containing medications from overseas API manufacturers contaminated with NDEA.  Defendants continued to manufacture and sell contaminated losartan medications after the initial recalls.

77.     The fraudulent actions of Defendants caused damage to Plaintiff and Class members, who are entitled to damages and other legal and equitable relief as a result.

78.     As a result of Defendants' willful and malicious conduct, punitive damages are warranted.

<u>**COUNT VII**</u>
**Conversion**
**(On Behalf Of The Nationwide Class)**

79.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

80.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and North Carolina Subclass against Defendants.

81.     Plaintiff and the Class have an ownership right to the monies paid for the contaminated medications manufactured, distributed, and sold by Defendants.

82.     Defendants have wrongly asserted dominion over the payments illegally diverted to them for the contaminated medications.  Defendants have done so every time that Plaintiff and the Class have paid to have their prescriptions filled.

83.     As a direct and proximate cause of Defendants' conversion, Plaintiff and the Class suffered damages in the amount of the payments made for each time they filled their prescriptions.

<u>COUNT VIII</u>
**Strict Liability – Manufacturing Defect**
**(On Behalf Of The Nationwide Class)**

84.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

85.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and North Carolina Subclass against Defendants.

86.     The NDEA impurities contained in the Defendants' medications were a mishap in the manufacturing process which led to the losartan medications containing the harmful impurities NDEA.  NDEA was not intended to be included in the medications; it was an impurity that was created due to an error in the manufacturing process.

87.     Due to the NDEA impurities, the medications were not reasonably safe as marketed because NDEA is a known carcinogen and is acutely damaging to the liver.

88.     Plaintiff and all Class members used the product for its intended purpose, meaning they used the product as prescribed by their respective doctors.

89.     There is no way that Plaintiff or Class members could have discovered the defect

by exercising reasonable care.  There was no way for Plaintiff or Class Members to tell by visually observing, tasting, or smelling the medications that they were in fact contaminated with NDEA.  Nothing short of laboratory tests (which should have been done by Defendants for quality control purposes) would have revealed the defect to the unsuspecting consumer.

90.    Because Plaintiff and Class members had no way of knowing that their medications were in fact contaminated, Plaintiff and Class members could not have avoided the injury by exercising ordinary care.

91.    Defendants were supposed to manufacture, distribute, and sell losartan-containing medications without any harmful impurities such as NDEA.  The losartan medications were not designed or intended to contain NDEA.  The impurity resulted from a manufacturing defect which allowed the medication to become contaminated.

92.    Plaintiff and class members suffered harm as a result of consuming this contaminated medication.  The ingestion of NDEA is acutely harmful.  NDEA, when ingested orally, are immediately harmful to the liver, kidneys, and pulmonary function.  As such, NDEA causes harm as soon as it is consumed.

93.    Importantly, Plaintiff and the Class members do not seek resolution of downstream effects of NDEA exposure such as cancer, jaundice, and other individualized illnesses on a class-wide basis.  Any such actions can and should be redressed on an individual basis as they arise.  However, because of the acute toxicity of NDEA, Plaintiff and class-members suffered a concrete and identical harm that can and should be addressed on a class-wide basis.

94.    Because the losartan medications manufactured, distributed, and sold by Defendants suffered from a manufacturing defect which caused Plaintiff and Class members an

immediate and concrete harm, Defendants are strictly liable to Plaintiff and Class members.

## COUNT IX
### Gross Negligence
### (On Behalf Of The Nationwide Class)

95.    Plaintiff hereby incorporates by reference the allegations contained in all

preceding paragraphs of this complaint.

96.    Plaintiff brings this claim individually and on behalf of the members of the

proposed Class and North Carolina Subclass against Defendants.

97.    Defendants owed a duty of care to Plaintiff and the Class to manufacture,

distribute, and sell the subject losartan medications free from harmful defects and impurities.

98.    Defendants breached that duty by manufacturing, distributing, and selling losartan

medications contaminated with NDEA.

99.    Plaintiff and Class members were injured by ingesting an acutely toxic substance,

to wit NDEA, which were negligently present in the losartan medications manufactured,

distributed, and sold by Defendants.  Plaintiff and Class members also suffered economic

damages from the purchase of the losartan-containing medications.

100.    Importantly, Plaintiff and Class members do not seek resolution of downstream

effects of ingestion of high levels of NDEA such as cancer, jaundice, and other individualized

illnesses on a class-wide basis.  Any such actions can and should be redressed on an individual

basis as they arise.  However, because of the acute toxicity of NDEA, Plaintiff and class-

members suffered a concrete and identical harm that can and should be addressed on a class-

wide basis.

101.    Defendants' conduct evinces a reckless disregard for the rights of others, and

strongly suggests intentional wrongdoing.  As manufacturers and retailers of prescription

pharmaceuticals, Defendants had conducted quality testing of its medications.

102.    Further, despite the initial wave of recalls on December 20, 2018, Defendants continued to sell losartan-containing medications from overseas API manufacturers contaminated with NDEA.  Defendants continued to manufacture and sell contaminated losartan medications after the initial recalls.

103.    Because the losartan medications manufactured, distributed, and sold by Defendants suffered from a harmful impurity constituting a breach of Defendants' duty to Plaintiff and Class members, and because Defendants failed to immediately act to remediate the harmful impurity, Defendants are grossly negligent and are liable to Plaintiff for all injuries proximately caused by Defendants' gross negligence.

### COUNT X
### Negligence
### (On Behalf Of The Nationwide Class)

104.    Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

105.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class and North Carolina Subclass against Defendants.

106.    Defendants owed a duty of care to Plaintiff and Class members to manufacture, distribute, and sell the subject losartan medications free from harmful defects and impurities.

107.    Defendants breached that duty by manufacturing, distributing, and selling losartan medication contaminated with NDEA.

108.    Plaintiff and Class members were injured by ingesting acutely toxic substances, to wit NDEA, which were negligently present in the losartan medications manufactured, distributed, and sold by Defendants.

109.    Importantly, Plaintiff and Class members do not seek resolution of downstream effects of NDEA exposure such as cancer, jaundice, and other individualized illnesses on a class-wide basis.  Any such actions can and should be redressed on an individual basis as they arise.  However, because of the acute toxicity of NDEA, Plaintiff and class-members suffered a concrete and identical harm that can and should be addressed on a class-wide basis.

110.    Because the losartan medications manufactured, distributed, and sold by Defendants suffered from a harmful impurity constituting a breach of Defendants' duty to Plaintiff and class members, Defendants are negligent and are liable to Plaintiff and Class members for all injuries proximately caused by Defendants' negligence.

### COUNT XI
### Battery
### (On Behalf Of The Nationwide Class)

111.    Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

112.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class and North Carolina Subclass against Defendants.

113.    Defendants manufactured, distributed, and sold the contaminated losartan medications to Plaintiff and Class members with the knowledge and intent that Plaintiff and Class members would ingest the medications.  Defendants thus had knowledge that the harmful medications would come into contact with the bodies of Plaintiff and Class members.

114.     The intended contact, *i.e.* the medications being ingested by Plaintiff and Class members, was harmful in nature because the medications contained the harmful impurity NDEA.

115.    As such, Defendants committed an unlawful battery on Plaintiff and Class members, who ingested the medications.

25

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

A.    For an order certifying the nationwide Class and the North Carolina Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as the representative of the Class and North Carolina Subclass and Plaintiff's attorneys as Class Counsel to represent the Class and North Carolina Subclass members;

B.    For an order declaring that the Defendants' conduct violates the statutes referenced herein;

C.    For an order finding in favor of Plaintiff, the nationwide Class, and the North Carolina Subclass on all counts asserted herein;

D.    For compensatory, statutory, treble, and punitive damages in amounts to be determined by the Court and/or jury;

E.    For prejudgment interest on all amounts awarded;

F.    For an order of restitution and all other forms of equitable monetary relief;

G.    For injunctive relief as pleaded or as the Court may deem proper; and

H.    For an order awarding Plaintiff and the Class and North Carolina Subclass their reasonable attorneys' fees and expenses and costs of suit.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated:  January 24, 2019                    Respectfully submitted,

                                            **BURSOR & FISHER, P.A.**

                                            By:    _/s/ Andrew J. Obergfell_
                                                    Andrew J. Obergfell

Andrew J. Obergfell
888 Seventh Avenue
New York, NY  10019
Telephone: (212) 837-7150
Facsimile:  (212) 989-9163
Email: aobergfell@bursor.com

**EXHIBIT A**

# BURSOR & FISHER
P.A.

888 SEVENTH AVENUE
3ʳᵈ FLOOR
NEW YORK, NY 10019
www.bursor.com

NEAL J. DECKANT
Tel: 646.837.7165
Fax: 212.989.9163
ndeckant@bursor.com

January 24, 2019

*__Via Certified Mail – Return Receipt Requested__*

Torrent Pharma, Inc.
150 Allen Road
Basking Ridge, NJ 07920

The Kroger Co.
1014 Vine Street
Cincinnati, OH 45202

Harris Teeter, LLC
701 Crestdale Road
Matthews, NC 28105

Harris Teeter Supermarkets, Inc.
701 Crestdale Road
Matthews, NC 28105

Re:     *Notice and Demand Letter Pursuant to U.C.C. § 2-607*

To Whom It May Concern:

This letter serves as a preliminary notice and demand for corrective action by Torrent Pharma, Inc. ("Torrent"), The Kroger Co., Harris Teeter, LLC, and Harris Teeter Supermarkets, Inc. (together with The Kroger Co. and Harris Teeter, LLC, "Harris Teeter") pursuant to U.C.C. § 2-607(3)(a) concerning breaches of express and implied warranties related to our client, Ira Sanders, and a class of all similarly situated purchasers (the "Class") of contaminated losartan-containing medication manufactured, distributed, and sold by Torrent and Harris Teeter. This letter also serves as notice of violation of North Carolina's Unfair or Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. §§ 75-1.1, *et seq.*

Our client was prescribed and purchased losartan-containing medication manufactured and distributed by Torrent and sold by Harris Teeter. Our client's losartan-containing medication was contaminated with N-nitrosodiethylamine ("NDEA"), a carcinogenic impurity. On December 20, 2018, the U.S. Food & Drug Administration announced a voluntary recall of certain lots of losartan-containing generic medications manufactured and distributed by Torrent and Harris Teeter. The recall was due to the presence of NDEA in the recalled products, which later expanded to additional lots on January 22, 2019. This defect rendered the products unusable and unfit for human consumption. In short, the losartan-containing medications that

our client and the Class were purchasing are worthless, as they contained a toxic impurity rendering them unfit for human use. Torrent and Harris Teeter each violated express and implied warranties made to our client and the Class regarding the quality and safety of the losartan-containing medications they purchased. *See* U.C.C. *§§* 2-313, 2-314.

On behalf of our clients and the Class, we hereby demand that Torrent and Harris Teeter immediately (1) cease and desist from continuing to sell contaminated losartan-containing medications and (2) make full restitution to all purchasers of the contaminated losartan-containing medications of all purchase money obtained from sales thereof.

We also demand that Torrent and Harris Teeter preserve all documents and other evidence which refer or relate to any of the above-described practices including, but not limited to, the following:

1.  All documents concerning the packaging, labeling, and manufacturing process for Torrent and Harris Teeter's losartan-containing medications;

2.  All documents concerning the design, development, supply, production, extraction, and/or testing of losartan-containing medications manufactured and distributed by Torrent;

3.  All tests of the losartan-containing medications manufactured and distributed by Torrent;

4.  All documents concerning the pricing, advertising, marketing, and/or sale of losartan-containing medications manufactured and distributed by Torrent;

5.  All communications with customers involving complaints or comments concerning the losartan-containing medications manufactured and distributed by Torrent;

6.  All documents concerning communications with any retailer involved in the marketing or sale of losartan-containing medications manufactured and distributed by Torrent;

7.  All documents concerning communications with federal or state regulators; and

8.  All documents concerning the total revenue derived from sales of losartan-containing medication.

If you contend that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents immediately upon receipt of this letter.

Please contact me right away if you wish to discuss an appropriate way to remedy this matter. If I do not hear from you promptly, I will take that as an indication that you are not interested in doing so.

BURSOR & FISHER
P.A.

Very truly yours,

Neal J. Deckant